

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*/s/ Robert L. Jones*

**United States Bankruptcy Judge**

**Signed December 23, 2010**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| CAPROCK WINE COMPANY, L.L.C., § | Case No. 09-50576-RLJ-11 | |
| § | | |
| Debtor § | | |

| | | |
|---|---|---|
| § | | |
| CAPROCK REAL ESTATE HOLDINGS, § | Case No. 09-50577-RLJ-11 | |
| L.L.C., § | | |
| § | | |
| Debtor § | Jointly Administered under | |
| § | Case No. 09-50576-rlj11 | |

## MEMORANDUM OPINION AND ORDER

The Court considers the second application of Harold H. Pigg (Pigg) for allowance of attorney's fees and reimbursement of expenses filed on August 31, 2010. [Dkt #166]. PlainsCapital Bank (PlainsCapital) filed its objection to the application. [Dkt #177].

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b); this is a core

proceeding under 28 U.S.C. § 157(b)(2)(B). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052.

## BACKGROUND

The debtors, Caprock Wine Company, L.L.C. and Caprock Real Estate Holdings, L.L.C. (jointly, Debtors), filed voluntary Chapter 11 cases on December 23, 2009.[1] Shortly thereafter, an application to employ Pigg as attorney for the Debtors was filed and granted by the Court. [Dkt # 32, 57].

A basic understanding of the Debtors' corporate structure at the time the petitions were filed is necessary to explain the dispute at hand. On the petition date, Caprock Wine owned Caprock Real Estate. Palo Duro Wine Partners, L.P. owned Caprock Wine. Palo Duro, in turn, was owned by: (1) a 2.5% general partner, Lubbock DLR, Inc., (2) a 48.5% limited partner, Don Roark, and (3) a 49% limited partner, Oxbridge Capital Group, L.L.C. ("Oxbridge").

Oxbridge contended that not long after the bankruptcy filing, it successfully removed Lubbock DLR as general partner and forced a buyout of the partnership interest held by Roark. *See* Answer to Adversary Complaint ¶ 22, Case No. 10-05003 [Dkt # 4]. Oxbridge alleged that an individual named Phillip Anderson replaced Roark and Lubbock DLR and thus controlled the Debtors. *Id.* ¶ 23. Roark disagreed and a dispute about who controlled the Debtors ensued, giving rise to the filing of two adversary proceedings before the Court (adversary case numbers 10-05003 and 10-05004). Because the dispute left the Debtors without direction, the Court, upon an emergency motion of the United States Trustee, ordered the appointment of a Chapter 11 trustee on February 5, 2010. The adversary proceedings were eventually settled with the Oxbridge group ceding control back to Roark. Despite this, the trustee has remained in place and has liquidated by auction the bulk of the estate's assets.

Pigg now seeks compensation for attorney's fees and expenses incurred by the Debtors from the day the petition was filed, December 23, 2009, through February 4, 2010, the day before

---

[1] The cases are jointly administered under case number 09-50576. [Dkt. # 62].

the trustee was appointed. The application requests $16,410.00 for attorney's fees and $653.97 for expenses. Included within the fee request is time spent in connection with the adversary proceedings.

PlainsCapital, the major secured creditor in the case, objects to the application. The objections fall into three categories: (1) the fees related to the adversary proceedings, which fees PlainsCapital contends should be disallowed as not beneficial to the estate and unnecessary to the administration of the case, (2) the reasonableness of the fees, which PlainsCapital contends cannot be ascertained because the application is insufficiently detailed, and (3) the payment of any allowed fees and expenses, which PlainsCapital contends is prohibited because all funds are encumbered by its liens.

## DISCUSSION

Bankruptcy Code section 330 provides a bankruptcy court with the ability to award reasonable compensation to counsel for a debtor-in-possession for "actual, necessary services," as well as reimbursement for "actual, necessary expenses." *See* 11 U.S.C. § 330(a)(1)(A), (B). With respect to the amount to be awarded, the court must consider the nature, extent, and value of the services provided and, in so doing, take into account the following relevant factors: (1) the time spent on the services, (2) the rates charged, (3) whether the services were necessary to the administration of, or beneficial when the service was rendered toward the completion of, a case, (4) whether the services were performed within a reasonable amount of time, (5) whether counsel is board certified or otherwise has demonstrated skill and experience in the bankruptcy field, and (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners. *See* 11 U.S.C. § 330(a)(3). The court must not allow compensation for duplicative services or services that were neither reasonably likely to benefit the estate nor necessary to the administration of the case. 11 U.S.C. § 330(a)(4).

To satisfy the "actual" and "necessary" requirement, counsel's services must have resulted in an identifiable, tangible, and material benefit to the bankruptcy estate. *See In re Pro-Snax*

*Distribs., Inc.*, 157 F.3d 414, 426 (5th Cir. 1998). The bankruptcy court's analysis, therefore, is a two-step inquiry. *See Kaye v. Hughes & Luce, LLP*, No. 3:06-CV-01863-B, 2007 WL 2059724, at *9 (N.D. Tex. July 13, 2007). The bankruptcy court must first determine whether services were "actual" and "necessary" under section 330(a)(1)(A), which requirement is satisfied only insofar as such services result in an identifiable, tangible, and material benefit to the estate. *Id*. (interpreting *Pro-Snax*). Then, after a threshold showing of necessity is made, the court proceeds to calculate the amount of fees to be awarded. *Id.* In the Fifth Circuit, this is done by computing the "lodestar" amount, which is the product of multiplying the reasonable number of hours expended by the prevailing reasonable hourly rate. *Id.* (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995)). The lodestar is then adjusted based on the factors outlined in section 330(a)(3) and the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id.*[2]

Finally, as part of the analysis, the Court notes that certain services may benefit the estate without providing a clear quantifiable or monetary benefit. *See In re JNS Aviation, LLC,* No. 04-21055-RLJ-7, 2009 WL 80202, at *8 (Bankr. N.D. Tex. Jan. 9, 2009). In short, the benefits analysis does not necessarily require that each expenditure of time results in a quantifiable benefit to the estate. *Id.*

> It is against this backdrop that the Court considers the application and objections at hand.
> (1) *PlainsCapital's objection that certain fees do not correspond to services reasonably likely to benefit the Debtors' estate or are unnecessary to the administration of the case.*

PlainsCapital first objects to payment of any attorney's fees incurred in the adversary proceedings regarding the ownership dispute. This amount is $4,820.00. Such services,

---

[2] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717-19.

according to PlainsCapital, were neither likely to benefit the Debtors' estate nor necessary to the administration of the case. PlainsCapital grounds this argument in the fact that at the time the services were performed, PlainsCapital had a first-priority lien on and security interest in all of the Debtors' assets, and therefore, any ownership equity was valueless. Thus any determination regarding this valueless ownership equity provides no benefit to the Debtors' estate.

The Court agrees that Pigg's services in connection with the adversary proceedings generally benefitted Lubbock DLR and Roark, as opposed to the Debtors. The dispute concerned ownership rights and thus management rights. The Court is also persuaded, however, that clarifying the ownership and management issues aids in the administration of the bankruptcy cases. On this point, the Court notes that such issues were resolved by a "settlement" by which Oxbridge conceded the position of Roark and Lubbock DLR. It's hardly fair to fully discount such fees and expenses under the circumstances. The Court will therefore discount the fees by 50%, resulting in an allowed amount of fees for services provided in connection with the adversary proceedings of $2,410.00.

> (2) *PlainsCapital's objection that a determination cannot be made as to whether the fees and expenses requested in the application are reasonable.*

PlainsCapital also objects to the application because it claims the application is insufficiently detailed to enable the Court to determine whether the fees are in fact reasonable. PlainsCapital cites Appendix F to the Local Rules as requiring time entries be kept by "task codes."[3] According to PlainsCapital, this failure can lead to an inference that the applicant spent

---

[3] The guidelines cited by PlainsCapital as pertinent on this issue read as follows:
**C. Project Billing**
This is required in all cases where the applicant's professional fee is expected to exceed $10,000.00. The narrative should be categorized by subject matter, and separately discuss each professional project or task. All work for which compensation is requested should be in a category. Miscellaneous items may be included in a category such as "Case Administration." The professional may use reasonable discretion in defining projects for this purpose, provided that the application provides meaningful guidance to the Court as to the complexity and difficulty of the task, the professional's efficiency, and the results achieved. With respect to each project or task, the number of hours spent and the amount of compensation and expenses requested should be set forth at the conclusion of the discussion of that project or task. In larger cases with multiple professionals, efforts should be made by the professionals for standard categorization.

just under five hours preparing a simple motion for joint administration. Such a time allotment, according to PlainsCapital, appears "excessive and unreasonable." For this reason alone, the Court is asked to deny the application and require more exacting "task codes."

Although using specific task codes is a common and helpful practice, it is not needed here. The failure to use task codes does not render the fee application indecipherable. The Court has reviewed the Applicant's time entries and finds they both adequately describe and account for the time spent.

(3) *PlainsCapital's objection that the Interim Cash Collateral Order prohibits payment of the Applicant's fees and expenses from encumbered assets of the Debtors' estate.*

Finally, PlainsCapital asserts that any award of attorney's fees is not properly payable from its collateral. PlainsCapital contends that its debt is properly secured by perfected first-priority liens and security interests in all assets of the Debtors. Further, the trustee is only authorized to use cash collateral in accordance with the Interim Cash Collateral Order and, specifically, the budget attached to the order. PlainsCapital submits that the budget does not provide for the payment of Pigg's fees and was never revised to include payment of Pigg's fees and expenses.

The Court agrees with PlainsCapital. Pigg's fees and expenses, to the extent allowed, cannot be paid out of encumbered funds without either the consent of the lienholder, PlainsCapital, or the Court's order authorizing a surcharge under section 506(c) of the encumbered funds for purposes of paying the fees and expenses. *See* 11 U.S.C. § 506(c); *In re Ralph Owens Trucking Co., Inc.*, No. 03-40428, 2010 WL 395641, at *2 (Bankr. N.D. Tex. Jan. 27, 2010) (discusses that § 506(c) is an exception to the general rule that administrative claims are payable from unencumbered estate property and not from secured creditors' collateral). Pigg contends that PlainsCapital did in fact benefit from his services because the bankruptcy filing resulted in the sale of the estate's assets, thereby ensuring that PlainsCapital realized the fair market value of its collateral. As set forth above, the trustee, not the debtor, effected the sale of

the estate's assets. Pigg is seeking reimbursement for <u>his</u> fees and expenses because he is counsel for the two debtor estates that filed the chapter 11 cases to begin with. The connection between Pigg's services and any perceived benefit to PlainsCapital is tenuous, at best. It is not sufficient to trigger a surcharge of PlainsCapital's collateral. *See In re Grimland, Inc.*, 243 F.3d 228 (5th Cir. 2001) (section 506(c) requires a quantifiable and direct benefit to the secured creditor; an indirect or speculative benefit is not sufficient to authorize surcharge); *see also In re Ralph Owens*, 2010 WL 395641 at *2.

It is not clear to the Court, however, that all funds held by the trustee are in fact encumbered by PlainsCapital's liens. This issue was not addressed at the hearing on the application. The Court will simply provide that to the extent the trustee has available funds with which to satisfy the allowed fees and expenses, the trustee is directed to do so.

## CONCLUSION

Save for the $2,410.00 disallowed for Pigg's services provided in connection with the adversary proceedings, the Court is satisfied that Pigg provided actual, necessary services and incurred actual, necessary expenses and that such fees and expenses are reasonable under the circumstances. The Court will therefore allow the sum of $14,000.00 in fees and all the expenses ($653.97); the Court will direct that the trustee pay such fees and expenses only from unencumbered funds or encumbered funds in which the lienholder has consented to use for such payment. It is, therefore,

ORDERED that Pigg's fees of $14,000.00 and expenses of $653.97 are approved; it is further

ORDERED that the trustee is authorized to pay the approved fees and expenses from unencumbered estate funds or encumbered funds which the lienholder has consented to use for such payment.

### End of Memorandum Opinion and Order ###